Petition for a Re-hearing.
October 27.
The following Petition having been presented by Mr. Owsley, and considered, together with the subjoined Response thereto, by Mr. Turner — a Re-hearing was granted. And the case having been again heard and considered at this Term, the Court now orders that the former decision, as above rendered, shall stand unaltered.
The plaintiffs respectfully ask of the Court, a re-consideration of the opinion and decision rendered in this case.
As lessors of John' Doe, in whose name, as nominal plaintiff, the action of ejectment was instituted, the heirs of Luckett conceive themselves prejudiced by the judgment, and therefore entitled to prosecute and maintain the writ of error which, by the opinion of this Court, has been dismissed.
If the judgment had been against the plaintiff in the ejectment, the lessors might, undoubtedly, have maintained a writ of error, either in their own names, or in the name of the nominal plaintiff, John Doe. Sid. 317. 2 Bac. Abr. title Error, letter B. page 456 — note in margin.
In such a case, the lessors might maintain the writ because of the prejudice which they would, as lessors, be presumed to sustain by the judgment. In truth, the judgment against the plaintiff in ejectment is, of necessity, prejudicial to the lessors. The action is carried on at the cost of the lessors, and in case of failure in the action, they are liable to the judgment for costs., *313 If the land is recovered, the lessors, on whose demise the recovery is had, are entitled to the possession, and they might maintain trespass for mesne profits, either in their own names, or in the name of the nominal plaintiff against the defendants in the ejectment, and if not recovered, the judgment, under the present law of this country, is a bar to any other like action for the same land, founded on a demise or demises by them. In an action for mesne profits, the judgment in favor of the plaintiff in the ejectment is conclusive evidence of title in the lessors at the time of the demise laid in the decía-' ration, and the defendant is not permitted to question the right of the lessors on whose demise the judgment is rendered.
But, in this case, judgment was rendered in the ejectment, for the nominal plaintiff, and it is understood to be the opinion of a majority of the Court, that, as there was a judgment in favor of the nominal plaintiff, though on the demise of another lessor, and not on the demise of the heirs of Luckett, the heirs have not been so prejudiced by the judgment, as to enable them to maintain their writ of error.
The case is acknowledged to be one of a peculiar character, and no case has been found wherein such a question has been decided. But it is respectfully urged, that the heirs of Luckett are greatly prejudiced by the judgment. After the finding of the jury against their title, would the sheriff, under the execution which may issue on the judgment, be authorized to deliver the possession of the land to them? or would he be justified in acting under the execution according to their directions?
Suppose the lessor, under whose demise the verdict was found by the jury, and on which the-judgment was rendered by the Court, was to release to the defendants the land, or direct the clerk not to issue an execution, or, if one has issued, instruct the sheriff not to execute it, could the plaintiffs in error have any redress, or in any manner, or by any legal means, recover the possession of the land? Can they, after the finding against them, maintain an action for the mesne profits? And would not the finding of the jury, and the judgment of *314 the Court thereon, bar any other action of ejectment which might be brought in their names for the land? It would indeed be strange, if, after the jury and Court have pronounced judgment against the title of the lessors, the judgment could be used as evidence by them, in an action for the mesne profits, or that they could be permitted to maintain such an action. It would, under the present state of the law of this country, be equally strange, if, after the verdiet and judgment against their title, the lessors were at liberty to bring a.new action, and recover the land under the same title, against the defendants in the ejectment, or any other who was party to that action. By making the judgment in ejectment conclusive, the law, of necessity, considers the lessors as parties, and any decision that affects the title of any lessor, must necessarily be a prejudice to him.
Suppose possession is taken by the lessor, under whose demise the verdict was found, and judgment rendered, according to whose title will he be considered in possession? or, if possession be delivered under an execution founded on the judgment, by what title will the lessor be understood to be possessed — according to his own title, or the title of the heirs of Luckett, the latter of whom have been adjudged to have no title? To the counsel of the heirs of Luckett, it seems evident that, if possession is delivered under the judgment, it cannot, in any manner, inure to their benefit; that it would inure to the benefit of the lessor, on whose demise the verdict and judgment were recovered; that he would take the possession according to his, and not according to their, title; that he, and not they, might maintain an action for mesne profits against the defendants; that he, and not they, would be at liberty to control the judgment and process of the Court; that the judgment would be evidence in favor of his title, and evidence against their title; that, by the judgment, if permitted to stand, they in fact lose the land, and have no redress to recover it, by any other action.
These suggestions are hastily and imperfectly made, in this anomalous case; but they are brought to the consideration of the Court, under the conviction that the- *315 question involved deserves further examination and re-J .. flection.

Owsley, for LuckeWs Heirs.

Mr. Owsley also referred to the following authorities.

A writ of error may be brought by plaintiff to reverse his own judgment. 2 Saund. R., 104.
The writ lies where a party is aggrieved by any error in the foundation, proceeding, judgment &c. 2 Tidd's Prac., 10 51.
May be brought by any who is party or prejudiced by the judgment. 2 Saund. R. 46, n. 6. Same book, 101. e.
For conformity’s sake, the ■ writ must be brought in the names of all the parties. 2 Saund. R. 101, e.
But if prosecuted by part, it regularly suggests the judgment to have been to their prejudice. 2 Saund. R. 101, f.
The writ may be maintained in the name of the nominal plaintiff, or in the name of his lessor, to a judgment in an ejectment, 2 Bac. Mr. title Brror,, letter B. page 456, note in margin.
The Respouse

Of the defendant in error to the petition for a re-hearing filed in this case.

One of the grounds assumed in the petition is, that the decision in this case concludes the rights of the parties as to the title of the land — under a late act of assembly. We understand that act of assembly differently. It, according to our reading, only applies to cases where two originally adversary titles’ are litigated. Here but one original title is litigated, under which both parties claim the land.
But we controvert the position that, even in cases embraced by the act of assembly, the verdict and judgment are made conclusive in a future controversy, except between the plaintiff and defendant. It never was *316 intended by the Legislature, in the passage of that act, to change the law of ejectment as between co-lessors, or co-plaintiffs.
It is also contended on the part of the plaintiff, that the verdict and judgment are conclusive evidence of the right of W. F. Luckett to control the judgment; to take possession; release the judgment; is conclusive in his favor, in an action for mesne profits.
There is some doubt whether or not any of these positions be entirely correct; and we contend that, if they are all correct, they do not prove that the plaintiff has a right to maintain a. writ of error to reverse his own judgment. It is very questionable whether, in a court of law, a release of all the lessors of the judgment could be used or set up by the defendant. It is well settled that a deed of conveyance, pending the action, from the lessor to even the defendants, cannot be set up in the defence — on the ground that the Court is bound to consider the lease a real one. In this case, the lessors and defendant have all admitted on record, that there was a lease; and for the purposes of a trial, in this as well as in the Circuit Court, are concluded by that admission. They are estopped from denying it.
The same reasoning conduces to show, that W. F. Luckett alone has not the exclusive right to control the judgment; or to sue for mesne profits. Suppose, on his attempting to control it, a person of the name of the plaintiff were to appear and object to his control, and produce and prove an actual lease, such as is named in the declaration, and claim to control it — who would have the right? No one will contend that the lessee would not; it would be indisputable that he would. So, in the action for mesne profits, the defendant might plead that the lease laid in the declaration was a real, a bona fide, lease, and that the lessee had released, receipted &c. Would not this plea be good? Now, in the action of ejectment, as before stated, both parties, for the purposes of that action, admit a real lease, and are concluded from denying it. It is right and proper that the plaintiff, who states his own case, should be bound by it, *317 and not be permitted to controvert his own solemn admissions in his own pleadings of record.
But suppose that all the results would ensue, as contended for by the plaintiff in error: is it for this Court to extricate the plaintiff from the dilemma that his lessors have gotten into? If their interests were antago-nistical, why did they join in an-action against us, to try which of themselves owned the land. They had a right to have brought separate actions — one on each of their pretended claims. They chose to unite in joint and several leases to the plaintiff, and to attack the defendant, on all their claims, in one action. They did so, and succeeded, and now say, on the wrong title: to which we reply, that is a matter among yourselves, and with which we have no concern, and assuredly should be put to no expense in settling.
The plaintiff has recovered all he sued for, and full costs; and because he thinks that he recovered on the wrong claim — having three claims — he desires a reversal, not for the purpose of getting more than he has recovered, but that another of his claims may be established, and not the one on which he succeeded. It is admitted that no such case as that of the plaintiff can be found in the history of judicial proceedings; and we think that this admission in the petition for a re-hearing, is very strong evidence that the law of the case is against the plaintiff.
The plaintiff in error cites authority to show that, either the plaintiff in ejectment, or the lessor of the plaintiff, may prosecute a writ of error. There is great doubt on principle, whether this be or not good law. The authority cited is an elementary work, and not a book of reports: hence it may be a mere dictum. The difficulty in the case is, that, in such case, to enable the lessor to prosecute the writ of error, it is necessary for the Court, in the teeth of the record, to decide a matter of fact, and not of law; that is, that the lease is a fiction, and never was in fact made, although the plaintiff has so stated on record, and the defendant has been forced to admit it.
It is admitted in all the authorities, that the lease may *318 be, and sometimes is, a real one. Now, can the Court, judicially say when the lease is real and when fictitious? The record does not state; and how can a judge of an appellate court decide, except upon matters apparent in the record?
But suppose the lessor of the plaintiff can prosecute a writ of error; then we say that he has not done so here. The plaintiff below is plaintiff here, and he is not wronged, but has recovered all he sued for.
If the lessors, or part of the lessors, can prosecute a writ of error, then this is a proper case for that portion of the lessors who think they are wronged, to come forward as plaintiffs in a writ of error, and seek redress; but then they should not make Stith a defendant; but W. F. Luckett who they complain is about to wrong them.
It is contended for them, that, as the action of ejectment is used to try the title, that therefore this writ of ■error can be maintained, not to try whether any of the lessors have a better title than the defendant, but to try which of the lessors has, as between themselves, the better title. Now, we reply that, by the principles of the common law, the decision of one action of ejectment is no evidence between any of the parties in another action; and this is still the law in this case. It is preposterous to contend that, if I am in possession and stand in relation to one lessor so that I am estopped to deny his title, and the other lessor has actually a better title than the first lessor or me, and, upon the trial of an action of ejectment on their joint and several demises, the •Court determines that the plaintiff can recover on that •first named, and a recovery is had; that the lessor having in fact the better title must lose it, or reverse the judgment. The Court will see, in the case put, that, on either demise, the plaintiff could recover, and if he does recover, according to the doctrine contended for by the plaintiff, the suit must still go on until it is decided between the lessors, which has the better title, and that, in an aetion against me, in a contest after the judgment in the inferior court, in which I am not interested, and ought not to be put to cost about. Indeed, in the case *319 put, the holder of the better title would-, not reverse it; because the decision in favor of the other lessor, on the ground of estoppel; would be correct.
Had the plaintiff wished to try the question on the merits presented in the record, he should not have insisted on a recovery in opposition to the strenuous efforts of the defendant, on the demise of W. F. Luckett; but have stricken that out; or he should, in the first instance, have only laid a demise in the name of Levin Luckett’s heirs, as such. He had it in his power to have taken either course; he elected to take the one he has taken; the difficulty he is in, is of his own seeking, and we do not think that we should be run to costs to extricate him.
If writs of error are to be prosecuted to settle rights between co-lessors — how are they to be argued? Must each set of lessors have counsel to argue against the others? How should such cases be docketted? Certainly not as this is. The question here is, W. F. Luck-ett and the other heirs of Levin Luckett against Wm. F. Luckett. John Doe is dismissed from the case, and Wm. F. Luckett, in the new controversy, is both plaintiff and defendant. In the case of Bonta vs. Clay, 5 Litt. it was decided that this Court could not judicially know when a lease was real, and when fictitious, and that the Court was bound so far to treat the lease as real, as to reversé a judgment, that the lessor of the plaintiff recover, instead of the plaintiff. The Court, in that case, seem to think that you cannot get along with the action of ejectment, without keeping up the lease.
All which is respectfully submitted.
Turner P. D„